# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DALE E. HARPER,           )
                             )
       Plaintiff,        )
                             )
v.                             )         **Case No. CIV-11-996-HE**
                             )
WOODWARD COUNTY BOARD   )
OF COUNTY COMMISSIONERS et al.,  )
                             )
       Defendants.      )

## REPORT AND RECOMMENDATION

Plaintiff Dale E. Harper, appearing pro se and proceeding *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging violations of his federal constitutional rights. United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). This Report and Recommendation addresses whether the stay of certain claims should be lifted and whether certain claims should be dismissed in accordance with the Court's independent screening obligations.

## I.      BACKGROUND AND STATUS OF ACTION

On February 10, 2012, Plaintiff filed an amended complaint in which he asserted some 24 claims against at least 30 defendants.[1] *See* Second Am. Compl., Doc. No. 50. Plaintiff's claims are largely, but not entirely, based on actions taken in connection with

_____

[1] In this Report and Recommendation, the undersigned refers to Plaintiff's February 10, 2012 Complaint, as modified by a June 7, 2013 Order (Doc. No. 136), as Plaintiff's "Second Amended Complaint."

the arrest, detention, and prosecution of Plaintiff by officials in Woodward County, Oklahoma, for violation of various Oklahoma criminal statutes.

On September 27, 2012, the Court dismissed with prejudice Plaintiff's claims against three groups of Defendants—state judges Don Work and Ray Dean Linder; state prosecutors Hollis Thorpe, Danny Lohman, A.J. Laubhan, and Don Brown; and state witness Otto Vines—due to the immunity of those Defendants to such claims. Order, Doc. No. 73, at 1-2, 4. Further, the Court dismissed without prejudice Plaintiff's claims against Defendants Joe Tate, Urgent Care, Edwina Smith, and an "unknown thief" for failure to state a claim upon which relief may be granted. *Id.* at 3-4.

Next, in accordance with the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), the Court stayed many of Plaintiff's remaining claims because they appeared to relate to ongoing criminal proceedings against Plaintiff in *State v. Harper*, No. CF-2009-198 (Woodward Cnty. Dist. Ct. filed June 30, 2009).[2] *See* Order, Doc. No. 73, at 2-3, 4; *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (noting that under *Younger*, federal courts must avoid "interference with pending state judicial proceedings absent extraordinary circumstances"). Specifically, the Court stayed Plaintiff's claims against Defendants Kevin Mitchell, T. Keith Wilson, Newell Wright, Cynthia Viol, Vicki Cook, Kim Crouch, Kenny Roberts, Mike Harper, Joe Adams, Troy White, and Deputy Cody until the conclusion of the Woodward County criminal proceedings. Order, Doc. No. 73, at 2-3, 4. The Court similarly stayed

---

[2] An electronic version of the docket in Case No. CF-2009-198 is publicly available at http://www1.odcr.com/detail?court=077-&casekey=077-CF++0900198.

Plaintiff's claims against the Woodward County Board of County Commissioners ("Board of County Commissioners" or "the Board") and Woodward County Sheriff Gary Stanley that relate to Plaintiff's arrest and prosecution. Order, Doc. No. 73, at 3, 4.

Plaintiff's other claims against Defendants Stanley and the Board were not stayed. *See* Order, Doc. No. 73, at 5. The Court also did not stay Plaintiff's claims against Defendants Saunnie Thompson, Devan Brewer, and Roger Routh.[3] *See* Order, Doc. No. 73, at 5; Order, Doc. No. 185, at 1-2.

Plaintiff was granted leave to amend his current pleading to assert claims against four additional defendants: City of Woodward police officers Travis Munson, James Rea, Mike Morton, and Barrett Storm. *See* Order, Doc. No. 129. Plaintiff in his Second Amended Complaint had named "John Doe[s] 1, 2, and 3" as defendants; he then subsequently identified Munson, Rea, Morton, and Storm as the referenced individuals. *See* Order, Doc. No. 129; Order, Doc. No. 136, at 2; Second Am. Compl. at 4.[4] Making provision for the mistake in number, the Court ordered the substitution of Defendants Munson, Rea, Morton, and Storm for John Does 1 to 4. *See* Order, Doc. No. 136, at 2. Because Plaintiff's claims against those Defendants also related to Plaintiff's ongoing criminal proceedings in Woodward County Case No. CF-2009-198, such claims were stayed in accordance with *Younger*. *See* Order, Doc. No. 185, at 1-2.

---

[3] In Plaintiff's Second Amended Complaint, Defendant Devan Brewer's last name is misspelled as "Brewar." *See* Second Am. Compl. at 4; Def. Brewer's Dispositive Mot., Doc. No. 152, at 7 n.1 (clarifying spelling).

[4] Citations to documents filed with the Court use the page numbers assigned by the Court's electronic filing system.

On December 29, 2014, addressing claims that were not subject to the stays noted above, the Court dismissed certain claims and denied summary judgment as to others. *See* Order, Doc. No. 257, at 9-11. In accordance with *Younger*, the Court also stayed Plaintiff's claims in Count VII of the Second Amended Complaint of excessive force against Defendant Brewer, failure to intervene against Defendant Routh, as well as equal protection claims against both Defendants Brewer and Routh, due to those claims' relation to ongoing criminal proceedings against Plaintiff in *State v. Harper*, No. CF-2010-100 (Woodward Cnty. Dist. Ct. filed Mar. 23, 2010).[5] *See* Order, Doc. No. 257, at 9-11; R. & R., Doc. No. 220, at 64-66. Plaintiff was granted limited permission to seek leave to amend certain claims that were dismissed without prejudice. Order, Doc. No. 257, at 8. Plaintiff later filed a motion on that basis, and that motion has been denied in an order entered contemporaneously with this Report and Recommendation.

At this point, the following claims remain:

- the claims stayed under *Younger* against Defendants Board of County Commissioners, Stanley, Mitchell, Wilson, Wright, Viol, Cook, Crouch, Roberts, Harper, Adams, White, Cody, Munson, Rea, Morton, Storm, Brewer, and Routh;
- an individual-capacity claim against Defendant Thompson in Count V for deliberate indifference to serious medical need; and
- an individual-capacity claim against Defendant Stanley in Count XXI for deliberate indifference to inmate health and safety.

*See* Order, Doc. No. 257, at 9, 11-12; R. & R., Doc. No. 220, at 69 n.46.

_____

[5] An electronic version of the docket in Case No. CF-2010-100 is publicly available at http://www1.odcr.com/detail?court=077-&casekey=077-CF++1000100.

On May 28, 2015, Plaintiff filed a notice and other documents with the Court, reflecting that Plaintiff's criminal proceedings in Woodward County District Court had recently concluded with Plaintiff's entry of *nolo contendere* pleas to the charges pending against him in that jurisdiction, with the exception of one charge that was dismissed. *See* Pl.'s Notice, Doc. No. 289, at 1; Pl.'s Decl. Exs., Doc. Nos. 287-1, 287-2. As a result of those pleas, Plaintiff was convicted of assault and battery with a deadly weapon in Case No. CF-2009-198 and assault and battery upon a police officer in Case No. CF-2010-100—each found to be committed after Plaintiff had previously been convicted of two felony crimes. Pl.'s Decl. Ex. 1, Doc. No. 287-1, at 14; Pl.'s Decl. Ex. 2, Doc. No. 287-2, at 9. Plaintiff was sentenced on May 13, 2015, to imprisonment for a term of 20 years as to each count, with all except the first six years suspended, and with the sentences to be served concurrently with each other and to be credited for Plaintiff's time served. *See* Pl.'s Decl. Ex. 1 at 9, 14-15; Pl.'s Decl. Ex. 2 at 1-2, 9-10.

The state-court dockets in Case Nos. CF-2009-198 and CF-2010-100 reflect that Plaintiff did not seek to withdraw his pleas or to pursue any appeal of these convictions. *See supra* notes 2, 5. Plaintiff's convictions have since become final under Oklahoma law. *See* Okla. Stat. tit. 22, § 1051(a); Okla. Stat. tit. 22, ch. 18 app., R. 4.2(A); *Burnham v. State*, 43 P.3d 387, 389 & n.1 (Okla. Crim. App. 2002). In addition, Plaintiff has

indicated to the Court that he was released from state custody in June 2015. *See* Pl.'s Letter, Doc. No. 290, at 2, 3.[6]

## II. ANALYSIS

### A. *The Court's Stays of Plaintiff's Claims*

With the conclusion of Plaintiff's relevant criminal proceedings in state court, the considerations giving rise to this Court's stays of Plaintiff's claims under *Younger* are no longer applicable. Accordingly, the undersigned recommends that the Court lift the stays that have been imposed in this matter.

The undersigned has thus also considered whether any of the stayed claims, if permitted to proceed, would present an impermissible collateral attack on Plaintiff's convictions in Case Nos. CF-2009-198 and CF-2010-100. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that a claim for damages for harm "caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable under § 1983 unless the conviction or sentence has already been invalidated). Although certain of Plaintiff's claims involve circumstances that relate to those convictions, not all such claims are inherently barred as collateral attacks. *See id.* at 487 n.7. For instance, claims that do not implicate the elements of the crimes of conviction are generally

---

[6] Plaintiff's release from state custody is confirmed by the Oklahoma Department of Corrections' publicly searchable database. *See Offender Lookup*, Okla. Dep't of Corr., http://docapp065p.doc.state.ok.us/servlet/page?_pageid=394&_dad=portal30&_schema=PORTAL30&doc_num=178446&offender_book_id=73412 (last visited July 30, 2015) (reflecting that Plaintiff was released on June 26, 2015, and is currently on probation).

permissible. *See id.* at 487 n.6; *Sharif v. Picone*, 740 F.3d 263, 269-70 (3d Cir. 2014); *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558-59 (10th Cir. 1999).

From the factual allegations presented in Plaintiff's Second Amended Complaint, and the information provided by Plaintiff regarding his *nolo contendere* pleas—which themselves are not factual admissions of guilt but rather acceptances of punishment as though guilty, *see North Carolina v. Alford*, 400 U.S. 25, 35 n.8 (1970)—the undersigned finds that *Heck* does not *clearly* bar Plaintiff's claims that relate to Case Nos. CF-2009-198 and CF-2010-100. *See, e.g.*, Fed. R. Evid. 410(a)(2); *Sharif*, 740 F.3d at 267-70; *Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216, 1220 (10th Cir. 2000). Subsequent factual development or argument from the parties, when appropriate, may aid the Court in making a definitive determination as to this issue; however, at this point, the undersigned recommends allowing the stayed claims to proceed, with the exception of any claims for which the undersigned recommends dismissal below.

### B. The Court's Obligation to Screen Plaintiff's Second Amended Complaint

Given the above recommendations, the undersigned has also considered whether any claims that have been stayed are subject to dismissal under the Court's independent obligation to screen certain pleadings.

The Court is required to evaluate the sufficiency of any complaint brought by a prisoner (1) with respect to prison conditions; (2) seeking redress against a governmental entity, officer, or employee; or (3) who is proceeding *in forma pauperis*. *See* 42 U.S.C. § 1997e(c)(1); 28 U.S.C. §§ 1915A(a), 1915(e)(2)(B). The Court must dismiss a complaint or any portion of a complaint that fails to state a claim upon which relief may

be granted.[7]  *See* 42 U.S.C. § 1997e(c)(1); 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007) (indicating that court uses same analysis for complaint's sufficiency whether performed sua sponte or pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)).

Although the Court construes a pro se litigant's pleadings liberally, no litigant is exempt from compliance with, or the consequences of, applicable procedural rules.  *See Kay*, 500 F.3d at 1218.  Such rules require a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint fails to state such a claim when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (footnote and citation omitted). Bare legal conclusions in a complaint, however, are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted."  *Hall v. Bellmon*, 935 F.2d

---

[7] The Court is also required to dismiss a complaint or any portion of a complaint that is frivolous or malicious or that seeks monetary relief from a defendant who is immune from such relief.  *See* 42 U.S.C. § 1997e(c)(1); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

1106, 1110 (10th Cir. 1991); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (noting that although courts construe pro se pleadings liberally, courts "will not supply additional factual allegations to round out a plaintiff's complaint"). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Gee v. Pacheco*, 627 F.3d 1178, 1184-85 (10th Cir. 2010) (discussing *Iqbal*). The specific factual requirements for stating a claim under 42 U.S.C. § 1983 are detailed, as necessary, below.

1. Plaintiff's Claims Against Kim Crouch and Kenny Roberts in Count VIII

a. Factual Allegations in Second Amended Complaint

In Count VIII, Plaintiff claims that Defendants Kim Crouch and Kenny Roberts violated various federal constitutional rights of Plaintiff. *See* Second Am. Compl. at 10.[8] Plaintiff describes Defendant Crouch as "employed as night supervisor at Whitehorse [R]anch" and Defendant Roberts as "not employed." *Id.* at 6; *see also* Second Am. Compl. Exs., Doc. No. 50-1, at 43 (reflecting Defendant Crouch's employment at "White Horse Ranch"),[9] 41 (reflecting Defendant Roberts' unemployed status due to disability).

---

[8] Because Plaintiff identifies no claims beyond alleged federal constitutional violations against Defendants in Count VIII, the undersigned construes Plaintiff's claims as seeking relief only under 42 U.S.C. § 1983. *See Whitney*, 113 F.3d at 1173-74 (emphasizing that court "will not . . . construct a legal theory on a [pro se] plaintiff's behalf").

[9] Publicly available records of the Oklahoma Secretary of State indicate that White Horse Ranch is a domestic limited liability company. *See Entity Summary Information*, Okla. Sec. State, https://www.sos.ok.gov/corp/corpInformation.aspx?id=3512118484 (last visited July 30, 2015).

Plaintiff asserts that each of these Defendants "was acting under color of state law" but that that their "duties are unknown." Second Am. Compl. at 6.

Plaintiff alleges that Defendants Crouch and Roberts "worked in a common enterprise" "to get [Plaintiff] arrested for their actions, with false statements." *Id.* at 10. In support of this assertion, Plaintiff states:

> Kenny Roberts says that I called his house and told him that I was going to kill him and Kim Crouch, and rape her son Briar, just to induce him to come outside with a gun, so I could walk across 120 yards of open field, just to tackle him as he went up the steps of his porch, take his gun from him and shoot, Otto Vines, and Kim Crouch says "*she did not see the accident*"?
>
> When Kenny told me he'd kill me, I said, all right, here I am[.] H[e] and Kim had Joe (Otto) in a crossfire[.] I warned him[;] he did not listen[.] [H]e was on the porch, when he was shot from behind. Kim Crouch is the only person not physically accounted for.

*Id.* Plaintiff cites exhibits ("6-39 to 44") that include voluntary, sworn statements from witnesses at the scene of the alleged shooting in June 2009, including Defendants Roberts and Crouch. *See id.*; Second Am. Compl. Exs. at 39-46; *see also* Second Am. Compl. at 3 (alleging that Defendants Crouch and Roberts "wrote false statements to get the Plaintiff blamed for their actions").

> b. Whether Plaintiff Has Shown State Action by Defendants Crouch and Roberts in Count VIII, as Required to State a Claim upon Which Relief May Be Granted Under 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, *and* must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added); *see also* 42 U.S.C. § 1983. "The traditional

definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). State action may be shown when the defendant's conduct "allegedly causing the deprivation of a federal right [is] fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).

Such fair attribution is established through a two-part test: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.*; *see also id.* at 939 (noting various "tests" available when a court confronts the "necessarily fact-bound inquiry" of assessing whether a private party engaged in state action); *West*, 487 U.S. at 49; *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448-56 (10th Cir. 1995) (describing four state action tests).

Plaintiff alleges that Defendants Crouch and Roberts, who appear to have been private parties at the relevant time, made false statements to authorities to cause Plaintiff's detention under state law by those authorities. *See* Second Am. Compl. at 3, 6, 10. "[T]he mere furnishing of information to police officers who take action thereon does not constitute joint action under color of state law which renders a private actor liable under § 1983." *Lee v. Town of Estes Park*, 820 F.2d 1112, 1116 (10th Cir. 1987) (citing *Benavidez v. Gunnell*, 722 F.2d 615 (10th Cir. 1983)). Thus, Plaintiff's allegations against Defendants Crouch and Roberts, without more, are insufficient to

plausibly show that either Defendant engaged in conduct that was fairly attributable to the state. *See id.*; *see also Carey v. Cont'l Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987) ("[The plaintiff] did not allege facts from which we might conclude that his arrest resulted from any concerted action, whether conspiracy, prearranged plan, customary procedure, or policy that substituted the judgment of a private party for that of the police or allowed a private party to exercise state power."). Having alleged insufficient facts to show state action by Defendants Roberts and Crouch in Count VIII, Plaintiff has failed to state a claim upon which relief may be granted under § 1983 against those Defendants. *See West*, 487 U.S. at 48. Plaintiff's claims in Count VIII should be dismissed without prejudice accordingly. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Iqbal*, 556 U.S. at 678-79.

2. <u>Plaintiff's Claims Against His Court-Appointed Criminal Defense Attorneys in Counts X, XI, XII, XXII, and XXIV</u>

In Counts X, XI, XII, XXII, and XXIV of his Second Amended Complaint, Plaintiff generally alleges that three criminal defense attorneys, Defendants T. Keith Wilson, Newelle E. Wright, and Cynthia Viol, who were appointed to represent Plaintiff

in his criminal matters in Woodward County District Court, violated various federal constitutional rights of Plaintiff. *See* Second Am. Compl. at 5, 11, 12, 17, 18.[10]

a. Factual Allegations in Second Amended Complaint

In Count X, Plaintiff alleges that Defendant Wilson "conspired" with the victim and the prosecutor "to bind Plaintiff over for trial" on the basis of allegedly false testimony in *State v. Harper*, No. CF-2009-198. Second Am. Compl. at 11. In support of this assertion, Plaintiff states:

> On 11-24-09, right before the commencement of the preliminary hearing, under the advice of my attorney, [Defendant] Wilson, I signed a waiver of conflict of interest with magistrate Don Work. Then my attorney had the Court "*delete*" from the record, State[']s exhibit #8. This exhibit proved beyond a doubt that my accuser, the victim, Otto Vines had just committed perjury. He had just said that I had shot him with a 12 g[au]ge shotgun in his right thigh with No. 6 buckshot. He also stated that the wound went all the way through. My attorney had no problem with exhibit # 7, that[']s blown up to 5x its size, but has the court delete a picture of 2 stitches, (the

_____

[10] In his request for relief, Plaintiff seeks money damages, unspecified declaratory relief, and injunctive relief "in the form of change of venue." *See* Second Am. Compl. at 21. In a "Declaration" filed soon after his Second Amended Complaint, Plaintiff "clear[s] up any confusion about his intentions in regards to this cause of action," discussing, among other things, his request for a change of venue. *See* Pl.'s Decl., Doc. No. 53. Plaintiff asserts that his then-detention by state authorities, based upon a conviction in *State v. Harper*, No. CF-1999-301 (Woodward Cnty. Dist. Ct. filed Nov. 23, 1999), could be successfully challenged through state postconviction relief proceedings but that he was first seeking a state-court change of venue due to perceived inequities in Woodward County District Court. *See* Pl.'s Decl. at 2. For numerous reasons primarily grounded in principles of federalism, the relief requested by Plaintiff cannot be obtained from this Court. Further, the undersigned does not construe Plaintiff's request for relief in this lawsuit as seeking release from state custody, and, accordingly, the undersigned does not construe Counts X, XI, XII, XXII, or XXIV, or any other count, as presenting a claim for habeas relief. *See generally Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005). Because Plaintiff identifies no claims beyond alleged federal constitutional violations against Defendants in Counts X, XI, XII, XXII, and XXIV, the undersigned construes Plaintiff's claims as seeking relief only under 42 U.S.C. § 1983. *See Whitney*, 113 F.3d at 1173-74.

entrance wound), to make the court[']s record show #7 as the entry rather than the exit wound as it tru[]ly is. [Defendant] Wilson cannot say that he was unaware of this photo, as page 5, line[s] 5, and 6, of the Preliminary hearing state: "There is on file in the Court a notice of open records." Furthermore, during the hearings when [the prosecutor] was handing the #8 exhibit to Vines for identification, he was shaking his head to the left and to the right. Vines then stated: I'm not sure if that[']s not the backside of my leg. A blind syphil[]itic monkey in a pink dress, with a purple tutu could see that it was the backside of his leg. This is how they railroad (a poor) innocent man.

*Id.* at 11-12.

In Count XI, Plaintiff alleges that Defendants Wright and Viol "repeatedly covered-up, and refused to fix the legal problems created by [Defendant] Wilson." *Id.* at 12. Specifically, Plaintiff asserts:

On numerous occas[]ions, I requested that [Defendant] Wright, and [Defendant] Viol, correct the error of me being bound over for trial [based upon] perjury, by motion for mistrial, motion to Quash, anything, and as of today[']s date 01-27-12, in 31 months, nothing has been done, except to further the errors of [Defendant] Wilson. The reintroduction of exhibit #8 gets a mistrial, the informations in all 4 charges have no verification, so the trial Court has no jurisdiction, and the only thing [Defendant] Wright and [Defendant] Viol are willing to help me do is, to plead guilty to 20 years.

*Id.*

In Count XII, Plaintiff alleges that Defendant Viol and two state prosecutors "worked together, as a cohesive unit, in a common enterprise, to bind Plaintiff over for trial on 2 counts" of assault and battery on a police officer. *Id.* at 12, 4. Plaintiff cites exhibits ("6-31 to 33" and "6-47") that include three pages of a Probable Cause Affidavit for Arrest Without Warrant that was filed in *State v. Harper*, No. CF-2010-100, and one page of a similar document that appears to be related to the charge against Plaintiff in *State v. Harper*, No. CF-2009-376 (Woodward Cnty. Dist. Ct. filed Nov. 30, 2009), as

mentioned below. *Id.*; *see* Second Am. Compl. Exs. at 31-33 ("6-31 to 6-33"), 48 ("6-47").

Plaintiff then asserts:

[Defendant] Viol refuses to come to Court prepared with the necessary materials. She only needed to request/motion the Court for a transcript of the hearing on the application to revoke, to impeach the victim's testimony at prelim, in CF-2009-376, as, at the app to revoke hearing [the victim] said the tray bounced off the Bars[;] then at prelim [the victim] changed her story from the tray bounced off the bars to[:] I threw it directly into her face. At the prelim for CF-2010-100 [Defendant Viol] flat out refused to ask a single question, that did not reinforce the state[']s position. [Defendant Viol] keeps playin[g] control games[. Defendant Viol] wants me to beg[.] "*I refuse*." At the first prelim 2010-100, [Defendant Viol] told me, you ain't runnin[g] nothin[g], when I tried to get her to ask [Defendant Brewer] how he managed to get the cuffs on. [Defendant Viol] handed the case to the D.A. in a basket. And in 09-376, [Defendant Viol] turned a misdemeanor into a felony. And that charge "was" an accident.

Second Am. Compl. at 12-13.

In Count XXII, Plaintiff alleges that Defendant Viol "refus[es] to investigate any thing [Plaintiff] bring[s] to her attention that would help [Plaintiff's] defense," "treats everything [Plaintiff] say[s] as a lie, and treats [Plaintiff] as if [he's] guilty as charged." *Id.* at 17. Specifically, Plaintiff asserts that Defendant Viol declined to investigate the location and condition of a dumpster that Plaintiff believes to have been at the scene of, and possibly damaged by, the shooting that gave rise to criminal charges against Plaintiff in Case No. CF-2009-198. *See id.* at 18. Without elaborating, Plaintiff suggests that if the dumpster "had a bullet hole in it," a photograph of such damage would be useful in Plaintiff's defense against the criminal charges. *See id.*

In Count XXIV, Plaintiff alleges that Defendant Viol and a state-court judge "worked as a cohesive unit, in a common enterprise" "when they found me incompetent, and sentenced me to Vinita (The Oklahoma Forensics Center)." *Id.* at 18, 5. Plaintiff's accompanying factual allegations do not directly mention Defendant Viol, focusing instead on the state-court judge. *See id.* at 18-19. Plaintiff does suggest, however, that Defendant Viol did not notify Plaintiff that Plaintiff's competency would be among the topics discussed at a January 5, 2012 hearing in Woodward County District Court. *See id.*

> b. Whether Plaintiff Has Shown State Action by Defendants Wilson, Wright, and Viol, as Required to State a Claim upon Which Relief May Be Granted Under 42 U.S.C. § 1983

Regardless of whether a criminal defense attorney is privately retained or court-appointed and paid by the state, he or she "does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 & n.7, 321-25 (1981); *see also Vermont v. Brillon*, 556 U.S. 81, 85-88, 91-92 (2009). Even when an attorney's inadequate performance of such traditional functions results in a deprivation of the criminal defendant's federal rights, that attorney has not acted under color of state law for § 1983 liability purposes. *See Brillon*, 556 U.S. at 85; *Briscoe v. LaHue*, 460 U.S. 325, 329 n.6 (1983); *Harris v. Champion*, 51 F.3d 901, 909-10 (10th Cir. 1995), *superseded by statute on other grounds as recognized in Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011).

For the purposes of this analysis, the undersigned does not accept as true Plaintiff's allegations that Defendants Wilson, Wright, and Viol engaged in conspiracy and other similar actions because those allegations are merely conclusory and not supported by well-pleaded facts. *See Iqbal*, 556 U.S. at 679-81. Plaintiff's remaining allegations against Defendants Wilson, Wright, and Viol—i.e., that they declined to object to various evidentiary decisions, failed to investigate other potential evidence, failed to effectively cross-examine witnesses, and failed to prepare Plaintiff for hearings—relate to traditional functions as counsel to Plaintiff in the criminal proceedings against him. In accordance with the above authorities, Defendants Wilson, Wright, and Viol cannot be said to have acted under color of state law in connection with such activities. Therefore, Plaintiff's claims under § 1983 against these Defendants should be dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Iqbal*, 556 U.S. at 678-79.[11]

---

[11] In Count XX, which is not specifically directed against Defendants Wilson, Wright, and Viol, Plaintiff alleges that he "repeatedly asked, begged and pleaded with [his] court appointed attorneys" regarding medical care for a back injury. *See* Second Am. Compl. at 16. Plaintiff then alleges that Defendant Viol advised Plaintiff that he did not have a right to medical care and that Defendant Viol expressed the opinion that an individual who shoots another individual should have no rights. *Id.* To the extent that Plaintiff intended to bring a claim under § 1983 against Defendants Wilson, Wright, and Viol in Count XX, Plaintiff has not identified the legal basis for such a claim and has presented insufficient factual allegations in any event. *See Iqbal*, 556 U.S. at 676, 678-79; *Whitney*, 113 F.3d at 1173-74. Accordingly, any claim asserted against Defendants Wilson, Wright, and Viol in Count XX should be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Iqbal*, 556 U.S. at 678-79.

### 3. Plaintiff's Claims Against Deputy Cody in Count XV

In Count XV, Plaintiff claims that Defendant Deputy Cody, a deputy sheriff with the Woodward County Sheriff's Department, violated Plaintiff's federal constitutional rights in connection with Plaintiff's June 2009 arrest. *See* Am. Compl. at 6, 13-14.[12] Specifically, Plaintiff alleges that Defendant Cody violated Plaintiff's rights under the Fourth Amendment to be free from unreasonable seizure and under the Fourteenth Amendment to equal protection of the laws. *Id.* at 13-14. The undersigned addresses Plaintiff's individual-capacity unreasonable seizure claim against Defendant Cody in the analysis that follows. Plaintiff's equal protection claim and any official-capacity claim are addressed in separate sections below, along with similar claims against other Defendants.

### a. Factual Allegations in Second Amended Complaint

Plaintiff alleges that Defendant Cody "intentionally made false statements to the [United States Marshals Service ("USMS")], to promote a false/illegal arrest" of Plaintiff. *Id.* at 13. Plaintiff states that on June 28, 2009, he called the USMS Communications Center in Washington, D.C., and spoke with an individual named Marshall McCorkle, who later provided a statement as to the incident. *See id.* at 14; Second Am. Compl. Exs. at 26-28. Plaintiff focuses on a portion of that statement in which Mr. McCorkle describes a conversation between Defendant Cody and himself, after placing Plaintiff's

---

[12] Because Plaintiff identifies no claims beyond alleged federal constitutional violations against Defendant Cody in Count XV, the undersigned construes Plaintiff's claims as seeking relief only under 42 U.S.C. § 1983. *See Whitney*, 113 F.3d at 1173-74.

call on hold "to verify [Plaintiff's] story" by calling the Woodward County Sheriff's

Department:

> Deputy Cody advised me that [Plaintiff] was the shooter in today's incident and that it was not "witnessed" as described by [Plaintiff]. I advised that I had spoken to [Plaintiff] and that [Plaintiff] emphatically stated that he was not armed, except for a pellet pistol. I advised that I would keep Deputy Cody on the line as well and give him any info that [Plaintiff] gave to me.

*See* Second Am. Compl. Exs. at 27; Second Am. Compl. at 14.

> b. Whether Plaintiff Has Stated a Claim upon Which Relief May Be Granted Under 42 U.S.C. § 1983 Against Defendant Cody

When a defendant is sued in his or her individual capacity under § 1983, the

plaintiff must establish specific elements as to each defendant. First, the plaintiff must

establish the defendant's "personal involvement or participation" in the alleged violation

of a federal right. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *see also*

*Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Second, the plaintiff must

establish a causal connection between the acts of that particular defendant and the alleged

violation of a federal right. *See Iqbal*, 556 U.S. at 676; *Pahls v. Thomas*, 718 F.3d 1210,

1225-28 (10th Cir. 2013). Finally, the plaintiff must establish that the defendant acted

with the state of mind required for the alleged underlying federal rights violation. *See*

*Daniels v. Williams*, 474 U.S. 327, 330 (1986).

Plaintiff disputes the veracity of Defendant Cody's alleged statement to Mr.

McCorkle. *See* Second Am. Compl. at 14. However, when Plaintiff was later arrested,

neither the USMS, Mr. McCorkle, nor Defendant Cody is alleged to have been involved,

either directly or indirectly, through any interaction with the arresting officials. *See id.* at

8; Order, Doc. No. 136, at 1-2 (amending Second Amended Complaint to reflect names of arresting officials); *see also Whitney*, 113 F.3d at 1173-74. Thus, among other deficiencies, Plaintiff presents no factual allegation to plausibly show that Defendant Cody *caused* the alleged violation of Plaintiff's right to be free from an unreasonable seizure, as would be required to state an individual-capacity claim under § 1983 against Defendant Cody. *See* Second Am. Compl. at 13-14; *Iqbal*, 556 U.S. at 676; *Pahls*, 718 F.3d at 1225-28.

Thus, in Count XV, Plaintiff has failed to state a claim upon which relief may be granted under § 1983 against Defendant Cody in his individual capacity for an unreasonable seizure, and the claim should be dismissed without prejudice accordingly. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Iqbal*, 556 U.S. at 678-79.

### 4. Plaintiff's Claims Against Kim Crouch, Kenny Roberts, Mike Harper, Troy White, and Vicki Cook in Counts XVI, XVII, XVIII, and XIX

Within Counts XVI, XVII, XVIII, and XIX, Plaintiff alleges that Defendants Kim Crouch, Kenny Roberts, Mike Harper, Troy White, and Vicki Cook violated various federal constitutional rights of Plaintiff in connection with events related to two arrests of Plaintiff in 1999 and subsequent felony prosecutions and convictions of Plaintiff in Woodward County District Court. *See* Second Am. Compl. at 14-16.[13] Defendants Crouch and Roberts are described above in Part II.B.1.a. Defendant Harper is Plaintiff's

---

[13] Because Plaintiff identifies no claims beyond alleged federal constitutional violations against Defendants in Counts XVI, XVII, XVIII, and XIX, the undersigned construes Plaintiff's claims as seeking relief only under 42 U.S.C. § 1983. *See Whitney*, 113 F.3d at 1173-74. Even if Plaintiff's claims were construed to include state-law tort claims, they would be subject to dismissal based upon their untimeliness, as discussed below.

brother, who Plaintiff further describes as "employed as an oilfield worker" and "a professional informant." *See* Second Am. Compl. at 6, 14. At the time relevant to Plaintiff's claims, Defendant White was a Woodward County Sheriff's Deputy. *See id.* at 6, 14. Finally, Defendant Cook was an attorney who represented Plaintiff in the above referenced state criminal proceedings, after allegedly being hired by Defendant Harper to do so. *See id.* at 5, 14. The claims are discussed below in chronological order, rather than adhering to the pleading's organization.

    a. Factual Allegations in Second Amended Complaint

In Count XIX, Plaintiff alleges that Defendants Crouch, Roberts, and Harper "worked together in a common enterprise" "to get a lien on [Plaintiff's] property" "as the First step" to certain events, occurring in 1999 through approximately 2001, described in Counts XVI, XVII, and XVIII. *See* Second Am. Compl. at 15. Plaintiff does not further describe any alleged lien on any property in Count XIX. *See id.* at 15-16. *But see id.* at 15 (alleging in Count XVII that Defendants Harper and Cook "systematically destroyed or stole every asset [Plaintiff] had, to prevent [Plaintiff] from selling it, to pay the lien on [Plaintiff's] land").

Instead, Plaintiff describes circumstances that began with his own disposal of a muzzleloader upon the direction of state officials, apparently in connection with restrictions imposed upon Plaintiff as a result of a criminal conviction. *See id.* at 16. Then, despite Plaintiff's "numerous objections," Defendant Harper "kept bringing his gun up to [Plaintiff's] house and leaving it there." *Id.* at 16. Plaintiff "made arrangements with Rick & [Defendant] Kim Crouch . . . to give them [Defendant Harper's gun], if he

left it at [Plaintiff's] house again," noting that "[Defendant] Roberts was there." *Id.*

When the gun later was at Plaintiff's house, Plaintiff "grabbed the gun and walked up to [the Crouches' home], to give them the gun." *Id.* Outside the home, when Plaintiff "raised the gun in the air," it "went off." *Id.* Defendant Crouch announced that she was calling the police. *Id.* Plaintiff "didn't know the gun was loaded," "threw the gun down" after clearing it of spent and live ammunition, "and left." *Id.* Plaintiff "turned [himself] in the next day." *Id.*; *see also State v. Harper*, No. CF-1999-272 (Woodward Cnty. Dist. Ct. filed Oct. 12, 1999) (reflecting that Plaintiff was convicted of the felony of possession of a firearm by a person under supervision of the Oklahoma Department of Corrections).[14]

In Count XVI, Plaintiff alleges that, in November 1999, Defendant Harper "got [Defendant] White of the [Woodward County Sheriff's Office] to kick in [Plaintiff's] front door, to arrest [Plaintiff based upon] a false statement." Second Am. Compl. at 14. Specifically, Plaintiff states that, on the day in question, Defendant Harper "started another fight, because [Plaintiff] would not give him the rental agreement back." *Id.* Plaintiff alleges that Defendant Harper "attacked" Plaintiff with "an ornamental sword[]" obtained from Plaintiff's wall. *Id.* Plaintiff "disarmed [Defendant Harper], and made him leave." *Id.* Plaintiff states that Defendant Harper then "called the [Woodward County Sheriff's Department] and said [Plaintiff] tried to kill him." *Id.* (asserting further that Defendant Harper had no injury); *see also id.* at 3 (describing Plaintiff's actions in

---

[14] An electronic version of the docket in Case No. CF-1999-272 is publicly available at http://www1.odcr.com/detail?court=077-&casekey=077-CF++9900272.

relation to Defendant Harper as "self-defense").[15]  Plaintiff states that Defendant White

"kicked in [Plaintiff's] front door" as Plaintiff "left out the back."  *Id.* at 14.  Defendant

White subsequently "tackled" Plaintiff outside.  *See id.*

Plaintiff asserts that he "never hit [Defendant] White" and that, thus, "there was no

battery."  *Id.* (citing exhibits "6-34 to 38"—i.e., Second Am. Compl. Exs. 34-38 (*State v.

Pratt*, 816 P.2d 1149 (Okla. Crim. App. 1991))).[16]  Nevertheless, as discussed *infra*

(Count XVII), Plaintiff later pled guilty to a charge of felony assault and battery on a

police officer that resulted from the incident.  *See id.* at 14-15; *see also State v. Harper*,

No. CF-1999-301 (Woodward Cnty. Dist. Ct. filed Nov. 23, 1999).[17]

In Count XVIII, Plaintiff alleges that Defendants Cook and Harper "had the

Plaintiff sent to the Oklahoma Forensics [C]enter, to be treated for 'paranoid delusions'

to undermine [Plaintiff's] testimony of the events."  *See* Second Am. Compl. at 15.

Specifically, Plaintiff alleges that Defendant Harper "convinced the Court that [Plaintiff]

---

[15] Plaintiff then briefly digresses in Count XVI to assert that on approximately June 23, 1999, Defendant Harper "tried to kill" Plaintiff using a 12-gauge shotgun "to get all our mother[']s life insurance policy."  *See* Second Am. Compl. at 14.

[16] *Pratt* differentiates misdemeanor assault on a police officer in Title 21, Section 649 of the Oklahoma Statutes from felony battery or assault and battery on a police officer in the same statutory provision.  *Pratt*, 816 P.2d at 1151-52, *overruled on other grounds by Pitts v. State*, 78 P.3d 551 (Okla. Crim. App. 2003).  The court notes that "assault" alone involves only a "threat to inflict injury" but that "battery" involves the "unlawful application of force."  *Id.* at 1151 (internal quotation marks omitted).  In citing *Pratt*, Plaintiff suggests that because he "never hit [Defendant] White," he could not be guilty of a felony.  *See* Second Am. Compl. at 14; *see also id.* at 15 (stating that Plaintiff "never struck [Defendant White], nor had the intention to").

[17] An electronic version of the docket in Case No. CF-1999-301 is publicly available at http://www1.odcr.com/detail?court=077-&casekey=077-CF++9900301.

was delusional, to cover-up [Defendant Harper's] false statements." *See id.*; *see also id.* at 14 (alleging in Count XVI that Defendant Harper made "a false statement" that Plaintiff "had tried to kill" Defendant Harper, resulting in Plaintiff's November 1999 arrest). Plaintiff further alleges that he "wasn't even allowed a competency hearing, before being sent to [the Oklahoma Forensics Center], and if there was a hearing [Plaintiff] was not allowed to attend, let alone present a defense." *Id.* at 15 (referencing the Oklahoma Forensics Center by its location in Vinita, Oklahoma); *see also State v. Harper*, No. CF-1999-301 (reflecting that in late 1999 Plaintiff was found to be incompetent but later, in early 2000, was found to be competent).

Plaintiff also contends in Count XVIII that Defendants Cook and Harper "worked together in a common enterprise, to deprive [Plaintiff] of his property." *Id.* at 15. Plaintiff supports this assertion by stating only: "I was sued by [Defendant] Harper for my property in '01, after he rolled my car, blew the motor in one pick-up, sold the other, and traded off . . . my '71 Mach 1." *See id.*

In Count XVII, Plaintiff alleges that Defendant Cook "conspired with" a state prosecutor "to force" Plaintiff to enter a guilty plea to the above discussed charge of felony assault and battery on a police officer. *See id.* at 14-15. Plaintiff states that Defendant Cook "knew from the police report that [Plaintiff] never struck [Defendant] White, nor had the intention to." *Id.* at 15 (citing exhibits "6-34 to 38" (Second Am. Compl. Exs. 34-38 (*State v. Pratt*, 816 P.2d 1149 (Okla. Crim. App. 1991)))). Plaintiff does not elaborate on the alleged conspiracy or otherwise mention the prosecutor in Count XVII. *See* Second Am. Compl. at 15. Rather, Plaintiff asserts that Defendant

Cook's alleged actions enabled Defendant Harper to "get [Plaintiff's] land, trailer, vehicles, and furnishings." *See id.* Plaintiff further asserts that Defendants Harper and Cook "systematically destroyed or stole every asset I had, to prevent me from selling it, to pay the lien on my land." *Id.*

        b.   Whether Plaintiff's Claims in Counts XVI, XVII, XVIII, and XIX Are Time-Barred

Plaintiff's claims in Counts XVI, XVII, XVIII, and XIX raise a substantial question as to whether Plaintiff's factual allegations show that Defendants Crouch, Roberts, Harper, White, and Cook engaged in conduct fairly attributable to the state that, in turn, also caused Plaintiff to be deprived of a federal right. *See* 42 U.S.C. § 1983; *supra* Part II.B.1.b (discussing basic requirements for liability under § 1983). Certain of Plaintiff's claims also raise a substantial question as to whether the claims may be barred as premature under *Heck*. *See Heck*, 512 U.S. at 486-87. Here, however, the undersigned focuses on the similarly dispositive issue of whether Plaintiff's claims are time-barred.

In his Second Amended Complaint, Plaintiff offers no allegation as to the timeliness of his claims; nor is he required to do so. *See* Second Am. Compl.; *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1096 (10th Cir. 2009). Nevertheless, when "it is clear from the face of the complaint" that a claim is time-barred and that "there are no meritorious tolling issues" that would "cure [the] timeliness problem," the court may dismiss that claim sua sponte for failure to state a claim upon which relief may be granted. *See Vasquez Arroyo*, 589 F.3d at 1097-98.

The undersigned finds it to be clear from the face of the Second Amended Complaint that Plaintiff's claims in Counts XVI, XVII, XVIII, and XIX are time-barred under the applicable statute of limitations for claims under § 1983 and that any tolling to which Plaintiff may be entitled will not cure the claims' untimeliness. The undersigned thus recommends that these time-barred claims be dismissed, as discussed below.[18]

"[F]ederal law governs the time of accrual of § 1983 claims," but "[s]tate statutes of limitations applicable to general personal injury claims supply the limitations periods for [such] claims." *Beck*, 195 F.3d at 557. Under federal law, "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) (internal quotation marks omitted); *see also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998). When a § 1983 claim accrues, the applicable limitation period—which is two years under Oklahoma law—begins to run. *See Beck*, 195 F.3d at 557; Okla. Stat. tit. 12, § 95(A)(3). Tolling of the statute of limitations is governed by state law, and in Oklahoma, such tolling is generally only permitted when the plaintiff can demonstrate that timely filing was prevented due to a "legal disability," such as incompetency or status as a minor, or due to defendants engaging in conduct "calculated to lull [the]

---

[18] In addition, this recommendation of dismissal places Plaintiff on notice that the claims may be dismissed. Plaintiff has the opportunity to be heard on this issue by objecting to this Report and Recommendation, as detailed below in the Notice of Right to Object. *See Vasquez Arroyo*, 589 F.3d at 1097-98; *Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010).

plaintiff[] into sitting on [his or her] rights." *See Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004) (citing Okla. Stat. tit. 12, § 96).

i.  Accrual Date

Plaintiff filed this lawsuit on September 7, 2011.  Absent any applicable tolling, Plaintiff's claims must have accrued on or after September 7, 2009, to fall within the two-year statutory period.  In Counts XVI, XVII, XVIII, and XIX of his Second Amended Complaint, Plaintiff states nothing to indicate that he would not have immediately known or have had reason to know of his alleged injuries.  *See* Second Am. Compl. at 14-16; *Johnson*, 925 F.2d at 1301.  Thus, any viable claim accrued on the respective date the incident occurred.  *See Johnson*, 925 F.2d at 1301; *Beck*, 195 F.3d at 557.

ii.  Tolling

Plaintiff was not a minor at any time relevant to the events in his Second Amended Complaint, and thus, Plaintiff cannot establish a legal disability in that regard.  *See* Second Am. Compl. at 14-16 (presenting factual allegations dating to 1999); Second Am. Compl. Exs. at 29, 31 (reflecting Plaintiff's birth date of October 11, 1969); *Alexander*, 382 F.3d at 1217; Okla. Stat. tit. 15, § 13 ("Minors, except as otherwise provided by law, are persons under eighteen (18) years of age.").  Further, Plaintiff presents no allegations from which one could reasonably infer that any Defendant engaged in conduct to lull Plaintiff into sitting on his rights.  *See Alexander*, 382 F.3d at 1217, 1219.

As to some claims, however, Plaintiff may be entitled to tolling due to a legal disability.  Plaintiff was found to be "incompetent" for an approximately 42-day period in late 1999 through early 2000, as determined by the Woodward County District Court.

*See* Second Am. Compl. at 15; *State v. Harper*, No. CF-1999-301 (reflecting finding of incompetency on December 7, 1999, and subsequent finding of competency on January 18, 2000); *Alexander*, 382 F.3d at 1217. Plaintiff suggests that this finding of incompetency was improper. *See* Second Am. Compl. at 15. And, in any event, depending on the criteria applied and circumstances that led to the state court's finding, Plaintiff's alleged incompetency may not qualify as a legal disability for tolling purposes. *See Alexander*, 382 F.3d at 1217 (citing *Lovelace v. Keohane*, 831 P.2d 624, 629 (Okla. 1992) (concluding that individual who can conduct own affairs for a number of years despite mental illness is sufficiently competent to preclude "legal disability" tolling)). Even if this Court were to accept the incompetency finding as applicable for the purposes of this analysis, Plaintiff's 42-day period of incompetency would, as discussed below, provide insufficient tolling to render his claims timely.

In Counts XVI, XVII, XVIII, and XIX, Plaintiff claims that the conduct of Defendants Crouch, Roberts, Harper, White, and Cook violated Plaintiff's federal constitutional rights, beginning in 1999 and concluding sometime in 2001. *See* Second Am. Compl. at 14-16. Any claims arising from these factual allegations would have accrued on or before January 1, 2002, and Plaintiff's right to sue on such claims would have expired two years and, with any applicable tolling for incompetency, forty-two days later—i.e., many years before Plaintiff filed this lawsuit on September 7, 2011. *See Johnson*, 925 F.2d at 1301; *Beck*, 195 F.3d at 557. Accordingly, Plaintiff's claims in Counts XVI, XVII, XVIII, and XIX are time-barred and should be dismissed with prejudice for failure to state a claim upon which relief may be granted under § 1983. *See*

28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Vasquez Arroyo*, 589 F.3d at 1097; *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); *cf. Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999) (suggesting that dismissal of pro se claim is appropriate when opportunity to amend would be futile due to "obvious[ness] that the plaintiff cannot prevail on the facts he has alleged"); *Curley v. Perry*, 246 F.3d 1278, 1282-84 (10th Cir. 2001) (affirming district court's sua sponte dismissal with prejudice of § 1983 complaint for failure to state a claim where "amendment would be futile"); *Davis v. Okla. Cnty.*, No. CIV-08-550-HE, 2009 WL 4264870, at *1, *2 & n.16 (W.D. Okla. Nov. 23, 2009) (dismissing § 1983 claims with prejudice sua sponte due to untimeliness).

5. Plaintiff's Equal Protection Claims

Throughout his Second Amended Complaint, Plaintiff alleges violations of his Fourteenth Amendment right to equal protection. The Court has previously dismissed all equal protection claims that remained among the claims not stayed under *Younger*. *See* Order, Doc. No. 257, at 4, 9-10; *see also* R. & R., Doc. No. 220, at 62-64. As to the stayed claims, but with the exception of claims found above to insufficiently allege state action or to be time-barred, the undersigned now considers whether Plaintiff has stated an equal protection claim upon which relief may be granted under § 1983—i.e., in Count I, II, III, IV, VII, or XV.[19]

_____

[19] To the extent that equal protection claims in Count I against Defendant Board of County Commissioners were not stayed under *Younger*, those claims have previously been dismissed for failure to state a claim upon which relief may be granted under

Stating an equal protection claim requires factual allegations that show disparate treatment among similarly situated persons, an impermissible burden upon a fundamental interest, or targeting of a suspect class. *See Romer v. Evans*, 517 U.S. 620, 631 (1996); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff presents no such factual allegations in Count I, II, III, IV, VII, or XV. *See* Second Am. Compl. at 7-8, 9-10, 13-14. Plaintiff describes only his own circumstances, never identifying any similarly situated persons. Plaintiff's allegations do not plausibly suggest that Defendants' actions impermissibly burdened a fundamental interest or targeted a suspect class. Nor does Plaintiff allege that he is a member of a suspect class. Having failed to present the requisite factual allegations, Plaintiff has failed to state an equal protection claim under § 1983 upon which relief may be granted and, accordingly, such claims in Counts I, II, III, IV, VII, and XV should be dismissed without prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Iqbal*, 556 U.S. at 678-79. Upon the Court's adoption of this recommendation, no equal protection claims will remain in the Second Amended Complaint.

6. Plaintiff's Official-Capacity Claims

Plaintiff does not specify in his Second Amended Complaint whether he is suing Defendants in their individual or official capacities, or both. The Court has previously dismissed all official-capacity claims among the claims that were not stayed under *Younger*. *See* Order, Doc. No. 257, at 9-11; *see also* R. & R., Doc. No. 220, at 66-69 &

_____

§ 1983. *See* Order, Doc. No. 257, at 9; Report & Recommendation, Doc. No. 220, at 62-64.

n.46.   As to the stayed claims, but with the exception of claims found above to insufficiently allege state action or to be time-barred, the undersigned now considers whether Plaintiff has stated an official-capacity claim upon which relief may be granted under § 1983—i.e., in Count I, II, III, IV, VII, or XV.

If a defendant is sued under § 1983 in his or her official capacity, the suit is generally treated as one against the governmental entity that the defendant represents. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).   Here, the relevant entities are a county and a city, thereby implicating municipal liability.   To establish municipal liability under § 1983, a plaintiff must first identify an official policy or custom of the municipality, whether enacted or maintained by its legislative body or an authorized decisionmaker.   *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-70 (10th Cir. 2013).   "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."   *Id.* at 770.

After identifying such an official policy or custom, the plaintiff must then establish that the policy or custom either (1) directly violated a federal right of the plaintiff, or (2) was the "moving force" behind a county employee's violation of a federal right of the plaintiff.[20]   *Id.*   Finally, a plaintiff must "show that the policy was enacted or

---

[20] Because a municipality cannot be vicariously liable under § 1983 for the acts of an employee, "rigorous standards of culpability and causation must be applied" when "a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless

maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* at 769, 770-71. Thus, for each claim of municipal liability, the plaintiff must establish three elements: (1) official policy or custom, (2) causation, and (3) requisite state of mind. *Id.* at 769.

Although Plaintiff refers to "policy" and "policies" in Count I against Defendant Board of County Commissioners, Plaintiff identifies no specific official policy or custom. Rather, Plaintiff vaguely describes circumstances in which he has allegedly been mistreated while living in Oklahoma. *See* Second Am. Compl. at 7. Specifically, Plaintiff alleges that the Board's "policies include the harassment of convicted felons (the poor)." *Id.*[21] In support, Plaintiff alleges that the following circumstances have affected him since he moved to Oklahoma in 1987:

> If I defend myself[,] I get a felony conviction[.] [P]eople with histories of vehicular assault are allowed to ram my vehicle, as I drive down the road. People are allowed to steal my property, and no charges get filed. If I get physically attacked and do nothing, I get arrested for it.

*Id.* Plaintiff then attributes those circumstances to statements allegedly made by Plaintiff's father "to anybody that would listen" that Plaintiff had previously been institutionalized based upon "murder, armed robbery and rape." *Id.* (capitalization altered). Such allegations, which reference only Plaintiff's own circumstances on unspecified and undetailed occasions, are insufficient to show the existence of any policy

---

has caused an employee to do so." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla.*, *v. Brown*, 520 U.S. 397, 405 (1997).

[21] The Court previously dismissed Plaintiff's claims in Count I against the Board that relate to Plaintiff's medical care, as well as certain claims alleging equal protection violations. *See* Order, Doc. No. 257, at 2, 9; *see also supra* note 19.

or custom of Woodward County. As to the remaining counts, i.e., Counts II, III, IV, VII, and XV, Plaintiff describes only the actions of individual Defendants without alleging any facts to connect those actions to an official policy or custom of the relevant municipal entity. *See id.* at 7-8, 9-10, 13-14.

Having failed to identify an official policy or custom, Plaintiff has failed to state an official-capacity claim under § 1983 upon which relief may be granted and, accordingly, any official-capacity claims in Counts I, II, III, IV, VII, and XV should be dismissed without prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Iqbal*, 556 U.S. at 678-79. Upon the Court's adoption of this recommendation, no official-capacity claims will remain in the Second Amended Complaint.

7. Plaintiff's Claims Against Defendant Board of County Commissioners

The above recommendation leads the undersigned to further consider whether Defendant Board of County Commissioners should be dismissed from this action. As previously determined by the Court, Plaintiff has stated no individual-capacity claims under § 1983 against the Board. *See* Order, Doc. No. 257, at 2 n.2, 11. In accordance with the above discussion and the Court's December 29, 2014 Order, Plaintiff has stated no official-capacity claims under § 1983 against the Board or any other Defendant for whom an official-capacity claim would be construed as against Woodward County, which the Board represents in actions brought against the County. *See* Okla. Stat. tit. 19, § 4; *DuBois v. Bd. of Cnty. Comm'rs of Mayes Cnty., Okla.*, No. 12-CV-677-JED-PJC, 2014 WL 4810332, at *4-9 (N.D. Okla. Sept. 29, 2014); Order, Doc. No. 257, at 1-2 & n.2, 9. The undersigned therefore concludes that Plaintiff has stated no claim against the

Board in his Second Amended Complaint, and the Board should be dismissed from this action accordingly. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Iqbal*, 556 U.S. at 678-79.[22]

## RECOMMENDATION

In sum, based on the foregoing analysis, the undersigned recommends:

1. That all stays as to claims in this matter be lifted.

2. That the following claims in Plaintiff's Second Amended Complaint be dismissed without prejudice in accordance with the Court's screening authority:

   a. Any individual-capacity claims against Defendants Roberts and Crouch in Count VIII;

   b. Any individual-capacity claims against Defendants Wilson, Wright, and Viol in Counts X, XI, XII, XX, XXII, and XXIV;

   c. Any individual-capacity claims against Defendant Cody in Count XV;

   d. Any individual-capacity claims against any Defendant for an equal protection violation in Counts I, II, III, IV, VII, and XV; and

   e. Any official-capacity claims against any Defendant in Counts I, II, III, IV, VII, and XV.

3. That the following claims in Plaintiff's Second Amended Complaint be dismissed with prejudice in accordance with the Court's screening authority:

---

[22] To the extent that Plaintiff brings any supplemental state-law tort claims against the County—a political subdivision of the State—the claims would be subject to dismissal because, among other reasons, Plaintiff fails to allege that he has complied with the state-law notice provisions for such claims, including, e.g., timely presentation of the claim to the County before filing suit. *See, e.g.*, Okla. Stat. tit. 51, §§ 152(11)(c), 152.1, 156(A)-(B), (D), 157; *Willborn v. City of Tulsa*, 721 P.2d 803, 805 (Okla. 1986); *Girdner v. Bd. of Comm'rs of Cherokee Cnty.*, 227 P.3d 1111, 1115-16 (Okla. Civ. App. 2009); Second Am. Compl.

a. Any claims against Defendants Crouch, Roberts, Harper, White, and Cook in Counts XVI, XVII, XVIII, and XIX because such claims are time-barred.

-and-

4. That Defendant Board of County Commissioners be dismissed from this action because, upon adoption of the recommendation in paragraph 2(e) above, no claims in the Second Amended Complaint will remain for which the Board could be liable.[23]

## NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by August 21, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[23] If this Report and Recommendation is adopted, Plaintiff's remaining claims will be: (1) various individual-capacity claims in Count II, except equal protection claims, against Defendants Stanley, Mitchell, and Adams; (2) an individual-capacity claim in Count III against Defendant Adams for unreasonable seizure; (3) individual-capacity claims in Count IV against Defendants Munson, Rea, Morton, and Storm for unreasonable seizure; (4) an individual-capacity claim in Count V against Defendant Thompson for deliberate indifference to a serious medical need; (5) an individual-capacity claim in Count VII against Defendant Brewer for excessive force; (6) an individual-capacity claim in Count VII against Defendant Routh for failure to intervene; and (7) an individual-capacity claim in Count XXI against Defendant Stanley for deliberate indifference to inmate health and safety.

This Report and Recommendation does not terminate the referral in the present case.

ENTERED this 31st day of July, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE